**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VERONICA GARCIA, as an individual and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. ___1:22-cv-4240___ |
| v. | ) ) | |
| ST. AUGUSTINE COLLEGE, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANT'S NOTICE OF REMOVAL**

Defendant St. Augustine College ("Defendant" and "St. Augustine"), pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, removes this action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division, at Chicago. The grounds for removal are as follows:

**JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. *See* 28 U.S.C. § 93(a)(1). Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a).

**THE ACTION & TIMELINESS OF REMOVAL**

3.      On July 12, 2022, Plaintiff, on behalf of herself and, purportedly, on behalf of all others similarly situated, filed a "Class Action Complaint" (the "Complaint") against St. Augustine

in the First Judicial Circuit Court for Cook County, Illinois, Case No.: 2022CH06701, (the "State Court Action"). Plaintiff filed her Complaint as a putative class action. (Compl., ¶ 109 (defining putative class on whose behalf Plaintiff purports to bring this action)). A true and correct copy of the Complaint is attached to this Notice of Removal as **Exhibit A**.

4.     On July 15, 2022, Plaintiff served St. Augustine with copies of the Summons, Complaint, and other related documents. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents filed in the State Court Action are collectively attached hereto as **Exhibit B**.[1]

5.     This Notice of Removal is timely because St. Augustine filed it within thirty (30) days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period begins when the defendant is served).

## CAFA JURISDICTION

6.     <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d). Section 1332(d) further provides that, for CAFA to apply, a member of the putative class must be a citizen of a state different from any defendant.

7.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), St. Augustine may remove the State Court Action to federal court under CAFA because: (i) this action is pled as a class action; (ii) the putative class includes more than one hundred members; (iii) unnamed members of the putative class are citizens of a state different than that of St. Augustine; and (iv)

---

[1] Because the Complaint is attached hereto as Exhibit A, St. Augustine has not also included it in Exhibit B.

the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## THE ACTION IS PLED AS A CLASS ACTION

8. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

9. As Plaintiff alleges, "Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated." (Compl., ¶ 108). Because class action suits brought pursuant to 735 ILCS 5/2-801 are substantially similar to class action suits brought pursuant to Federal Rule of Civil Procedure 23, the first CAFA requirement is satisfied.

## THE PUTATIVE CLASS INCLUDES
## AT LEAST ONE HUNDRED (100) MEMBERS

10. Plaintiff alleges that "[o]n or about February 24, 2022, St. Augustine notified state Attorneys General and many Students about a widespread data breach involving sensitive PII of 13,263 individuals." (Compl., ¶ 3). Further, Plaintiff alleges "St. Augustine discovered that files on its network were accessed and acquired by the unknown actor (the 'Data Breach')." *Id.*

11. Plaintiff alleges:

Member [sic] of the Classes are so numerous that joinder of all members is impracticable. St. Augustine has identified and sent notice to over 13,000 persons whose PII may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within St. Augustine's records.

*Id.* at ¶ 112.

12. "St. Augustine's records" indicate that the "Data Breach" affected approximately 17,383 individuals' information. Therefore, the putative class, defined by Plaintiff, includes more than the statutorily required minimum of 100 members. *See id.*

## MINIMAL DIVERSITY OF CITIZENSHIP

13.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any [named or unnamed] member of the class of plaintiffs is a citizen of a State different from any defendant."

14.     <u>Plaintiff's Citizenship</u>. For diversity purposes, a party's citizenship is determined by their domicile. *See Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996); *Guaranty Nat. Title Co., Inc. v. J.E.G. Assoc.*, 101 F.3d 57, 58-59 (7th Cir. 1996) (citizenship, not residence, matters for diversity jurisdiction). Plaintiff alleges that she "is a resident and citizen of Illinois, residing in Berwyn." (Compl., ¶ 15).

15.     <u>Unnamed Class Members' Citizenship</u>. To establish minimal diversity, the Court should consider the citizenship of all class members, including putative, both named and unnamed. *See* 28 U.S.C. § 1332(d)(1)(D) ("'class members' means the persons (named or unnamed) . . ."). Plaintiff alleges a "nationwide class action" that is geographically broader than her individual domicile. (Compl., ¶ 108). St. Augustine's records, referenced by Plaintiff (Compl., ¶ 112), indicate that it sent notice of the "Data Breach," to individual addressees in 32 non-Illinois states. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (noting that residence is prima facie evidence of domicile). Accordingly, it is more likely than not that at least one of the unnamed, putative class members is a non-Illinois citizen.

16.     <u>Defendant's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v.*

*Friend*, 130 S. Ct. 1181, 1192 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id.* "The public often (though not always) considers it the corporation's main place of business." *Id.* at 1193. As Plaintiff alleges, "St. Augustine College is a private college located in Chicago, Illinois, which has a principal place of business at 1345 W. Argyle St., Chicago, IL 60640." (Compl., ¶ 16). St. Augustine is organized under the laws of Illinois with its principal place of business in Illinois.

17.     Minimal diversity of citizenship is established pursuant to CAFA because Plaintiff is a citizen of Illinois, unnamed class members are not citizens of Illinois, and Defendant is a citizen of Illinois.

## THE AMOUNT IN CONTROVERSY
## EXCEEDS THE CAFA THRESHOLD[2]

18.     When a complaint does not specify the damages amount sought, as is the case with Plaintiff's Complaint, the removing defendants must prove by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C.A. § 1446(c)(2)(B). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).

19.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended to support, and cannot be construed as an admission, that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this action.

20.     <u>Negligence Claim</u>. Plaintiff alleges "[a]s a condition of applying for enrollment, gaining financial aid, or remaining a student at St. Augustine College, current and former Students are obligated to provide St. Augustine with certain PII . . .." (Compl., ¶ 124). And, she alleges "St. Augustine had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties." *Id.* at 128.

21.     Plaintiff further alleges:

> As a direct and proximate result of St. Augustine's negligence and negligence *per se*, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identify theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain [sic] in St. Augustine's possession and is subject to further unauthorized disclosures so long as St. Augustine fails to undertake appropriate and adequate measures to protect the PII in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of St. Augustine's goods and services they received.

*Id.* at ¶ 152. Plaintiff and her putative class note "injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses." *Id.* at ¶ 153.

22.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she and any member of the putative class are allegedly entitled for St. Augustine's alleged negligence. Plaintiff and the putative class do, however, seek damages in the form of "out-of-pocket expenses associated with the prevention, detection, and recovery

from identify theft, tax fraud, and/or unauthorized use of their PII." *Id.* at ¶ 152. One option to assign value to this line item of alleged damages is through the cost of credit monitoring. The cost of credit monitoring is an out-of-pocket expense associated with prevention and detection of identity theft.

23.    Three main identity-protection agencies—LifeLock, Equifax, and Experian—advertise monthly rates for credit-monitoring services ranging from $19.95 to $23.99 per person per month. For example, LifeLock offers a product, titled Ultimate Plus, that provides 1-Bureau credit monitoring with up to $1,000,000 in "stolen funds reimbursement" for $23.99 per month.[3] Similarly, both Equifax[4] and Experian[5] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $19.99 per month, respectively. Multiplying just the cost of providing one year of LifeLock credit-monitoring services at $23.99 by the number of putative class members, the amount in controversy for just credit monitoring is approximately $5,004,281.04 (calculated as: 17,383 individuals notified, times 12 months, times $23.99 per month).

24.    <u>Unjust Enrichment Claim</u>. Next, Plaintiff alleges unjust enrichment on behalf of herself and the nationwide putative class. Her Complaint states:

> The money that Students paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII.

---

[3] *See* https://www.lifelock.com/offers?expid=EASY&om_sem_cid=hho_sem_sy:us:ggl:pm:e:nb:ot::c:google:16244521572::&promocode=GSEMID30FR&utm_source=google&utm_medium=cpc&utm_campaign=16244521572&adgroup=&utm_term=&targetid=&matchtype=&utm_content=&network=x&device=c&adp=&testgroup=&pgrid=&ptaid=&gclid=EAIaIQobChMI9fqrpeqt-QIVsxx9Ch1IfAVbEAAYASAAEgJdEvD_BwE&gclsrc=aw.ds (last visited: August 4, 2022).

[4] *See* https://www.equifax.com/personal/products/value-product-comparison/ (last visited: August 4, 2022)

[5] *See* https://www.experian.com/consumer-products/identity-theft-and-credit-protection.html (last visited: August 4, 2022).

*Id.* at ¶ 158. Further, she alleges:

> Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement the data security measures adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII and that the Students paid for.

*Id.* at ¶ 161.

25.     For the 2021-2022 academic school year at St. Augustine, tuition is $488.00 per credit hour.[6] Assuming the entire putative class (defined by Plaintiff as "current and former students" (Compl., ¶ 1)) paid for only a single credit hour, and the Plaintiff argued that a single credit hour was the amount in controversy for this line item of alleged damages, the amount in controversy would be $8,482,904.00 (calculated as: 17,383 individuals notified times $488.00 for one credit hour of education).

26.     Breach of Express Contract Claim. In the alternative to unjust enrichment, Plaintiff pleads breach of express contract. *Id.* at ¶¶ 163-171. Plaintiff seeks "compensator, [sic] consequential, and nominal damages suffered as the result of the breach." *Id.* at ¶ 171. This amount in controversy would only further increase the aggregated amount in controversy.

27.     Breach of Implied Contract Claim. In the alternative to unjust enrichment, Plaintiff pleads breach of implied contract. *Id.* at ¶¶ 172-187. Here, Plaintiff and her putative class seek the same money damages sought in the unjust enrichment and breach of express contract claims plus injunctive relief. Specifically, Plaintiff requests that the Court order St. Augustine to "e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members." *Id.* at ¶ 187. In a suit for injunctive relief, "the amount in

---

[6] *See* https://www.staugustine.edu/tuition-fees/ (last visited: August 4, 2022).

controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). The object of litigation "may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003). Here, St. Augustine takes the latter.

28.     As one item of injunctive relief, among others sought, Plaintiff seeks:

> [F]or a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate St. Augustine's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment . . . .

*Id.* at "Prayer for Relief," ¶ C.xvii. A single SOC 2 Type 2 audit can cost an organization as much as $100,000. Plaintiff requests ten years of these audits. The object of this single item of injunctive relief may put into controversy an additional $1,000,000 (calculated as $100,000 per year for 10 years).

29.     <u>Prayer for Relief</u>. Finally, Plaintiff seeks undisclosed "damages, including actual, nominal, and consequential damages[,] . . . punitive damages[,] . . . an award of attorneys' fees, costs, and litigation expenses[,] . . . prejudgment interest on all amounts awarded . . . and . . . [s]uch other and further relief as this Court may deem just and proper." *Id.* Courts may consider the combined total amount of alleged actual damages and punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.").

-9-

30.    When a plaintiff pleads punitive damages, the Seventh Circuit allows removal based on the assumption that punitive damages may be awarded at a ratio range of 3-to-6 to 1, punitive to actual damages. *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011).

31.    At a 3:1 ratio, excluding attorneys' fees, punitive damages could possibly be in excess of $30 million (calculated as actual possible damages, excluding injunctive relief value and attorneys' fees, times three). This is further evidence that the amount in controversy is satisfied.

32.    <u>Total Amount in Controversy</u>. The above amount-in-controversy estimations based on Plaintiff's allegations, less attorneys' fees, exceeds $5,000,000 as required by 28 U.S.C. § 1332(d)(2). This matter satisfies all requirements of 28 U.S.C. § 1332(d). It may be removed under CAFA.

## NO EXCEPTIONS APPLY TO THIS CAFA REMOVAL

33.    "CAFA's language favors federal jurisdiction over class actions . . . with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (citing S. Rep. No. 109-14 at 42, U.S. Code Cong. & Admin. News 3, 40).

34.    Plaintiff seeks a *nationwide* class action arising out of the "Data Breach" and provides no indicia that this is a local matter. *See generally* Compl. (emphasis added). Under CAFA, Plaintiff bears the burden of persuading the Court that an exception applies to the removal. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006); *see also Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014) (noting "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed"); *In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010) (acknowledging that "plaintiffs could have guaranteed that the suit would remain in state court" if "the plaintiffs

-10-

might have defined their class as all Kansas citizens who purchased text messaging from Sprint Nextel or an alleged coconspirator").

35.    Local Controversy Exception. Neither St. Augustine nor Plaintiff can show, let alone demonstrate, that CAFA's "local controversy exception" applies without individually deposing all putative class members. The "local controversy exception" requires a district court to decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds (sixty-seven percent) of the proposed class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing. *Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1012, fn. 5 (S.D. Ill. 2020) (citing 28 U.S.C. § 1332(d)(4)(A)).

36.    Home-State Exception. Neither St. Augustine nor Plaintiff can show, let alone demonstrate, that CAFA's "home-state exception" applies without individually deposing all putative class members. The home-state exception requires the Court to decline jurisdiction if two-thirds (sixty-seven percent) or more of all proposed plaintiff classes in the aggregate and the primary defendant are citizens of the state where the class action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

37.    Without speaking to each putative class member, which impracticably forces a class certification analysis before removal, neither party can conclusively know the unnamed members' states of citizenship. *Myrick*, 764 F.3d at 664 ("Citizenship means domicile, which is where the person (1) resides and (2) intends to remain . . ..."). This is especially true for St. Augustine students who may attend the school for a limited time, with the intent to return to and remain in a different home state or home country, for St. Augustine's international student population. Simply because

a student attends St. Augustine in Illinois, and even temporarily resides there, does not mean the student is an Illinois citizen.

38.     Prima facie evidence, however, suggests that neither the local controversy exception nor the home state exception applies.

39.     St. Augustine's records indicate that approximately 17,383 individuals' information may have been impacted in the "Data Breach" as defined by Plaintiff. Of those, St. Augustine lacks address information for 5,338 individuals, demonstrating there is no available and conclusive evidence of citizenship for these individuals.

40.     St. Augustine also notified addressees across 32 non-Illinois states. These non-Illinois addresses make it more likely than not that these individuals are non-Illinois citizens.

41.     St. Augustine also received undeliverable mail notifications for individuals notified with Illinois addresses. These undeliverable mailings indicate that even individuals with Illinois addresses may not be Illinois citizens.

42.     Furthermore, of the successfully mailed Illinois addresses, hundreds of addresses are duplicative. Publicly available searches indicate that some of these duplicative addresses are single family homes, with multiple residents that do not share a last name. And, some of these addresses are apartment buildings known for housing students. In either situation – a home with multiple student roommates or apartments housing students – circumstantial evidence indicates that these addresses are not where an individual intends to "remain" permanently, as is required to prove citizenship. Further, there are several Illinois addresses that simply list the address of St. Augustine (1345 Argyle St. Chicago, IL), which indicates that the individual – who cannot possibly be domiciled *at St. Augustine* – lives and may be a citizen elsewhere. Therefore, it is more

likely than not that for the individuals with these addresses, their mailing address is not conclusive evidence of their ultimate citizenship.

43.     Resolving all doubts in favor of CAFA jurisdiction, neither the local controversy exception nor the home state exception applies to this removal. St. Augustine may remove this matter to this Court.

## STATE COURT NOTICE

44.     As required by 28 U.S.C. § 1446(d), St. Augustine is providing written notice of the filing of this Notice of Removal to Plaintiff's counsel and is filing a copy of this Notice of Removal with the Clerk of the First Judicial Circuit Court for Cook County, Illinois.

## RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

45.     Nothing in this Notice is intended to be, or should be construed as, an express or implied admission by St. Augustine of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of St. Augustine rights, claims, remedies, and defenses in connection with this action.

WHEREFORE, St. Augustine removes the above-captioned action now pending in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division, at Chicago.

Dated: August 11, 2022         Respectfully submitted,

*/s/ Maria A. Boelen*
Maria A. Boelen
Baker & Hostetler LLP
One North Wacker Drive
Suite 4500
Chicago, IL 60606
mboelen@bakerlaw.com
Ph: 312.416.6200
Fax: 312.416.6200

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Maria A. Boelen, certify that on the 11th day of August 2022, the foregoing ***Notice of***

***Removal***, was served via email on the following:

Gary M. Klinger
Milberg Coleman Bryson Phillips Grossman, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
gklinger@milberg.com

Terence R. Coates
Markovits, Stock & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
tcoates@msdlegal.com

*/s/ Maria A. Boelen*
Maria Boelen