EXHIBIT A

Hearing Date: 11/9/2022 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

**12-Person Jury**

FILED
7/12/2022 2:08 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH06701
Calendar, 16
18636472

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

### IN THE CIRCUIT COURT
### FIRST JUDICIAL CIRCUIT
### COOK COUNTY, ILLINOIS

**VERONICA GARCIA, as an individual and on behalf of all others similarly situated,**

**Plaintiff,**

**vs.**

**ST. AUGUSTINE COLLEGE,**

**Defendant.**

**CLASS ACTION COMPLAINT**

CASE NO.: 2022CH06701

DEMAND FOR JURY TRIAL

Plaintiff Veronica Garcia ("Plaintiff") brings this Class Action Complaint against St. Augustine College ("St. Augustine" or "Defendant"), as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

### I. INTRODUCTION

1.      Plaintiff brings this class action against Defendant St. Augustine College, a private college located in Chicago, Illinois, to seek damages for herself and other similarly situated current and former students or any other person(s) impacted in the data breach at issue ("Students" or "Class Members") who she seeks to represent, as well as other equitable relief, including, without limitation, injunctive relief designed to protect the very sensitive information of Plaintiff and other Class Members. This action arises from Defendant's failure to properly secure and safeguard personal identifiable information, including without limitation, unencrypted and unredacted names, Social Security numbers, and driver's license or state-issued identification numbers. (collectively, "personal identifiable information" or "PII").

2.      Plaintiff alleges St. Augustine failed to provide timely, accurate and adequate notice to Plaintiff and Class Members who were or are students at St. Augustine. Current and former Students' knowledge about what personal identifiable information St. Augustine lost, as well as precisely what types of information was unencrypted and in the possession of unknown third

parties, was unreasonably delayed by St. Augustine's unreasonable notification delay of approximately seven months after it first learned of the data breach.

3.      On or about February 24, 2022, St. Augustine notified state Attorneys General and many Students about a widespread data breach involving sensitive PII of 13, 263 individuals. St. Augustine explained in its required notice letter that it discovered *on August 7, 2021* (over six months earlier) that it "detected unusual activity within its digital environment." St. Augustine discovered that files on its network were accessed and acquired by the unknown actor (the "Data Breach").[1]

4.      In August 2021, St. Augustine chose not to notify affected Students or, upon information and belief, anyone of its data breach instead choosing to address the incident in-house by implementing other safeguards to some aspects of its computer security. It then simply resumed its normal business operations. [2]

5.      Over six months later, on February 1, 2022, St. Augustine concluded its investigation and learned that Class Members' PII had been impacted and taken from its network.[3]

6.      St. Augustine still took an additional three weeks to notify state Attorneys General and Students about a widespread data breach.

7.      St. Augustine hired the cyber security "experts" to "secure the environment" of St. Augustine's systems, and determined that Plaintiff's and Class Members' personal identifiable information (including but not limited to full names and Social Security numbers) was present and potentially stolen by the unauthorized person at the time of the incident.[4]

8.      Plaintiff and the Class Members in this action were, upon information and belief, current and former Students at St. Augustine College. The first that Plaintiff and the Class Members learned of the Data Breach was when they received by U.S. Mail Notice of Data Breach

---

[1] Notice Letter, Ex. A.
[2] *Id.*
[3] *Id.*
[4] *Id.*

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

letters ("Notice Letter") dated February 24, 2022, directly from St. Augustine.[5]

9.      In its Notice Letters, sent to Plaintiff, Class Members, and state and federal agencies, St. Augustine failed to explain why it took the company over six months (from August 7, 2021, when St. Augustine detected unusual activity to February 24, 2022) to alert Class Members that their sensitive PII had been exposed.[6] As a result of this delayed response, Plaintiff and Class Members were unaware that their PII had been compromised, and that they were, and continue to be, at significant risk to identity theft and various other forms of personal, social, and financial harm.

10.      Further, St. Augustine's Notice Letter to Plaintiff and Class Members does not explain how long the Data Breach occurred or how long the unauthorized actor had access to Defendant's network.[7]

11.      Plaintiff's and Class Members' unencrypted, unredacted PII was compromised due to St. Augustine's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' sensitive data. Hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiff and similarly situated Class Members. The risks to these persons will remain for their respective lifetimes.

12.      Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of St. Augustine's failure to: (i) adequately protect Students' PII; (ii) warn Students of its inadequate information security practices; and (iii) effectively monitor St. Augustine's network for security vulnerabilities and incidents. St. Augustine's conduct amounts to negligence and violates federal and state statutes.

13.      Plaintiff and Class Members have suffered injury as a result of St. Augustine's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or

---

[5] *Id.*
[6] *Id.*
[7] *Id.*

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits; deal with spam messages and e-mails received subsequent to the Data Breach, (v) charges and fees associated with fraudulent charges on their accounts, and (vi) the continued and certainly an increased risk to their PII, which remains in St. Augustine's possession and is subject to further unauthorized disclosures so long as St. Augustine fails to undertake appropriate and adequate measures to protect the PII. These risks will remain for the lifetimes of Plaintiff and Class Members.

14.     St. Augustine disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that its Students' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

15.     Plaintiff Veronica Garcia is a resident and citizen of Illinois, residing in Berwyn. Ms. Garcia received St. Augustine's *Notice of Data Security Incident*, dated February 24, 2022 by U.S. Mail. Exh. A.

16.     Defendant St. Augustine College is a private college located in Chicago, Illinois, which has a principal place of business at 1345 W. Argyle St., Chicago, IL 60640.

17.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

18.    All of Plaintiff's claims stated herein are asserted against St. Augustine and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this matter pursuant to Ill. Const. 1970, art. VI, § 9.

20.    This Court has personal jurisdiction over Defendant for at least the following reasons: (i) Defendant regularly does business or solicits business, engages in other persistent courses of conduct and/or derives substantial revenue from products and/or services provided to individuals in Cook County and in the State of Illinois and (ii) Defendant has purposefully established substantial, systematic and continuous contacts with Cook County and the State of Illinois and expects or should reasonably expect to be in court here.

21.    In short, Defendant has (more than) sufficient minimum contacts with this County such that this Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

22.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 because Defendant conducts its usual and customary business in this County and because a substantial portion of the events complained of occurred in this County.

### IV. FACTUAL ALLEGATIONS

***Background***

23.    St. Augustine College is a private college located in Chicago, Illinois, which has a principal place of business at 1345 W. Argyle St., Chicago, IL 60640.

24.    In its Notice of Data Breach letter (Exh. A), St. Augustine claims that it "takes the privacy and security of the personal information in our care very seriously."

25.    On its own website, St. Augustine holds itself out as committed to protecting the privacy of its Students. St. Augustine states it "will never give, sell, rent or share your personal

information with any person or company in any way not listed here, unless compelled by law."[8]

26.     As St. Augustine acknowledges in its Notice Letters, protection of personal identifiable information is something it takes "very seriously."

27.     Plaintiff and the Class Members, as current or former students at St. Augustine, reasonably relied (directly or indirectly) on this sophisticated higher education institution to keep their sensitive PII confidential; to maintain its system security; to use this information for business purposes only; and to make only authorized disclosures of their PII. Students, in general, demand security to safeguard their PII, especially when Social Security numbers and other sensitive PII is involved.

28.     St. Augustine had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

***The Data Breach***

29.     In late February 2022, St. Augustine first began notifying Class Members and state Attorneys General ("AGs") about a widespread data breach of its computer systems and involving the sensitive personal identifiable information of persons.[9] St. Augustine explained—but upon information and belief, only to the AGs—that the Data Breach was detected in August 2021.[10]

30.     According to its Notice Letters, St. Augustine explained it discovered *on August 7, 2021* (over six months earlier) that it "detected unusual activity within its digital environment." St. Augustine discovered that files on its network were accessed and acquired by the unknown actor.

31.     On or about February 24, 2022, St. Augustine notified state Attorneys General and many Students about a widespread data breach involving sensitive PII of 13, 263 individuals.

32.     In August 2021, St. Augustine chose not to notify affected Students or, upon information and belief, anyone, of its data breach instead choosing to address the incident in-house

---

[8] *See* https://www.staugustine.edu/privacy-policy (last accessed July 1, 2022).
[9] Office of the Maine Attorney General, *Data Breach Notifications*, available at: https://apps.web.maine.gov/online/aeviewer/ME/40/ca472a3d-e994-47fc-9e67-c39ae82adeff.shtml (last accessed July 5, 2022); *compare* Plaintiff's Notice Letter, Exh. A.
[10] *Id.*

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

by implementing other safeguards to some aspects of its computer security. It then simply resumed its normal business operations. Notice Letter, Ex. A.

33.     Over six months later, on February 1, 2022, St. Augustine concluded its investigation and admitted that Class Members' PII had been impacted and taken from its network. Notice Letter, Ex. A.

34.     St. Augustine still took an additional three weeks to notify state Attorneys General and Students about a widespread data breach.

35.     St. Augustine hired the cyber security "experts" to "secure the environment" of St. Augustine's systems, and determined that Plaintiff's and Class Members' personal identifiable information (including but not limited to full names and Social Security numbers) was present and potentially stolen by the unauthorized person at the time of the incident. Notice Letter, Ex. A.

36.     Plaintiff and Class Members in this action were, upon information and belief, current and former Students at St. Augustine College. The first that Plaintiff and Class Members learned of the Data Breach was when they received by U.S. Mail Notice of Data Breach letters dated February 24, 2022 directly from St. Augustine.  Notice Letter, Ex. A.

37.     The confidential information that was accessed without authorization included persons' full names along with their Social Security number.

38.     Upon information and belief, the PII was not encrypted prior to the data breach.

39.     Upon information and belief, the cyberattack was targeted at St. Augustine as a higher education institution that collects and maintains valuable personal, health, tax, and financial data from its current and former Students.

40.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII of Plaintiff and the Class Members.

41.     Beginning on or about February 24, 2022, St. Augustine sent affected persons (including Plaintiff Garcia) a *Notice of Data Security Incident*, informing the recipients of the notice that their confidential data was involved.

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

42.     St. Augustine admitted in its *Notice of Data Security Incident* to the Attorneys General that their systems were subjected to unauthorized access in August 2021. St. Augustine made no indication to either group (AGs or Class) that the exfiltrated PII was retrieved from the cybercriminals who took it, nor how long the data was available to these unauthorized actors.

43.     With its offer of credit and identity monitoring services to victims, St. Augustine is acknowledging that the impacted persons are subject to an imminent threat of identity theft and financial fraud.

44.     In response to the Data Breach, St. Augustine claims it has "implemented additional safeguards to minimize the chance that an incident like this could occur in the future."[11] St. Augustine admits additional security was required, but there is no indication whether these steps are adequate to protect Plaintiff's and Class Members' PII going forward.

45.     St. Augustine had obligations created by contract, industry standards, common law, and representations made to its Students to keep the PII of Plaintiff and Class Members that was entrusted to St. Augustine confidential, and to protect the PII from unauthorized access and disclosure.

46.     Plaintiff and Class Members provided their PII to St. Augustine with the reasonable expectation that St. Augustine as a higher education institution would comply with its duty and obligations and representations to keep such information confidential and secure from unauthorized access.

47.     St. Augustine failed to uphold its data security obligations to Plaintiff and Class Members. As a result, Plaintiff and Class Members are significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

48.     St. Augustine did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiff's and Class Members' PII to be exposed.

---

[11] *Id.*

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

***Securing PII and Preventing Breaches***

49.     St. Augustine could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing PII.

50.     In its notice letters, St. Augustine acknowledged the sensitive and confidential nature of the PII. To be sure, collection, maintaining, and protecting PII is vital to virtually all of St. Augustine's business purposes as a higher education institution. St. Augustine acknowledged through its conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure.

***The Ransomware Attack and Data Breach were Foreseeable Risks of which Defendant was on Notice***

51.     It is well known that PII, including Social Security numbers and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

52.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[12]

53.     Of the 1,473 recorded data breaches, 108 of them were in the banking/credit/financial industry, with the number of sensitive records being exposed exceeding 100 million. In fact, over 62% of the 164 million sensitive records exposed in data breaches in 2019 were exposed in those 108 breaches in the banking/credit/financial sector.[13]

54.     The 108 reported financial sector data breaches reported in 2019 exposed 100,621,770 sensitive records, compared to 2018 in which only 1,778,658 sensitive records were exposed in financial sector breaches.[14]

55.     Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as

---

[12]     https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed December 10, 2021)
[13] *Id.*
[14] *Id* at p. 15.

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

well as severe distress and other strong emotions and physical reactions.

56.     Individuals are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of Social Security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

57.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), St. Augustine knew or should have known that its electronic records would be targeted by cybercriminals.

58.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

59.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, St. Augustine failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

### At All Relevant Times St. Augustine Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information

60.     At all relevant times, St. Augustine had a duty to Plaintiff and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods,

train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when St. Augustine became aware that their PII may have been compromised.

61.     St. Augustine's duty to use reasonable security measures arose as a result of the special relationship that existed between St. Augustine, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted St. Augustine with their PII when they or their employers or other business entities entrusted St. Augustine to manage their payroll and benefits accounts.

62.     St. Augustine had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, St. Augustine breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

63.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a.     Maintaining a secure firewall configuration;

b.     Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.     Monitoring for suspicious or irregular traffic to servers;

d.     Monitoring for suspicious credentials used to access servers;

e.     Monitoring for suspicious or irregular activity by known users;

f.     Monitoring for suspicious or unknown users;

g.     Monitoring for suspicious or irregular server requests;

h.     Monitoring for server requests for PII;

i.     Monitoring for server requests from VPNs; and

j.     Monitoring for server requests from Tor exit nodes.

64.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud

committed or attempted using the identifying information of another person without authority."[15]
The FTC describes "identifying information" as "any name or number that may be used, alone or
in conjunction with any other information, to identify a specific person," including, among other
things, "[n]ame, Social Security number, date of birth, official State or government issued driver's
license or identification number, alien registration number, government passport number,
employer or taxpayer identification number."[16]

65.      The ramifications of St. Augustine's failure to keep its Students' PII secure are long
lasting and severe. Once PII is stolen, particularly Social Security and driver's license numbers,
fraudulent use of that information and damage to victims is likely to continue for years.

### *The Value of Personal Identifiable Information*

66.      PII of data breach victims remains of high value to criminals, as evidenced by the
prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen
identity credentials. For example, personal information can be sold at a price ranging from $40 to
$200, and bank details have a price range of $50 to $200.[17] According to the Dark Web Price Index
for 2021, payment card details for an account balance up to $1,000 have an average market value
of $150, credit card details with an account balance up to $5,000 have an average market value of
$240, stolen online banking logins with a minimum of $100 on the account have an average market
value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an
average market value of $120.[18]

67.      Social Security numbers, for example, are among the worst kind of personal
information to have stolen because they may be put to a variety of fraudulent uses and are difficult
for an individual to change. The Social Security Administration stresses that the loss of an

---

[15] 17 C.F.R. § 248.201 (2013).
[16] *Id.*
[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct.
16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed December 10, 2021).
[18] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*:
https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed December 10, 2021).

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[19]

68.  Furthermore, trying to change or cancel a stolen Social Security number is no minor task. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

69.  Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[20]

70.  This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than

---

[19] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed December 10, 2021).
[20] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last accessed December 10, 2021).

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

10x on the black market."[21]

71.     PII can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[22]

72.     Given the nature of St. Augustine's Data Breach, as well as the long delay in notification to Class Members, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' PII can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

73.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[23] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

74.     To date, St. Augustine has offered its Students *only one year* of identity monitoring services and the approximately seven-month delay from their discovery of the Data Breach to the Notice Letters. The offered services are inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

75.     The injuries to Plaintiff and Class Members were directly and proximately caused by St. Augustine's failure to implement or maintain adequate data security measures for its current

---

[21]     Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed December 10, 2021).

[22] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[23] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed December 10, 2021).

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

and former Students.

### *St. Augustine Failed to Comply with FTC Guidelines*

76.     Federal and State governments have established security standards and issued recommendations to lessen the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[24]

77.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[25] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

78.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[26]

79.     The FTC recommends that businesses:

a.      Identify all connections to the computers where you store sensitive information.

b.      Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.      Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

---

[24]     Federal     Trade     Commission,     *Start     With     Security,     available     at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf     (last accessed December 10, 2021).

[25]Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*: https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed December 10, 2021).

[26] FTC, *Start with Security*, *supra* note 34.

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

d.      Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f.      Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.      Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.      Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.      Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

80.     The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

81.    Because Class Members entrusted St. Augustine with their PII directly or indirectly through St. Augustine, St. Augustine had, and has, a duty to the Class Members to keep their PII secure.

82.    Plaintiff and the other Class Members reasonably expected that when they provide PII to their college, that St. Augustine would safeguard their PII.

83.    St. Augustine was at all times fully aware of its obligation to protect the personal data of Students, including Plaintiff and members of the Classes. St. Augustine was also aware of the significant repercussions if it failed to do so.

84.    St. Augustine's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—including Plaintiff's and Class Members' full names, Social Security numbers, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

### *Plaintiff and Class Members Have Suffered Concrete Injury As A Result Of Defendant's Inadequate Security And The Data Breach It Allowed.*

85.    Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their PII, and Class Members provided Defendant with sensitive personal information, including their Social Security numbers and driver's license numbers.

86.    Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for their education, Plaintiff and other reasonable Students understood and expected that their PII would be protected with data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected. As

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

such, Plaintiff and the Class Members suffered pecuniary injury.

87.     Cybercriminals capture PII to exploit it; the Class Members are now, and for the rest of their lives will be, at a heightened risk of identity theft. Plaintiff has also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

88.     The cybercriminals who obtained the Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining employment;
- obtaining a loan;
- applying for credit cards or spending money;
- filing false tax returns;
- stealing Social Security and other government benefits; and
- applying for a driver's license, birth certificate, or other public document.

89.     In addition, if a Class Member's Social Security number is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

90.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

91.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.[27]

---

[27] *Id.*

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

92.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[28] Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[29] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[30] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that have not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class Members' PII will do so at a later date or re-sell it.

93.     As a result of the Data Breach, Plaintiff and Class Members have already suffered damages.

94.     In its Notice Letter, Defendant represented to the Class Members and AGs that it initially discovered the Data Breach on August 7, 2021, and admitted files were accessed and acquired by the cybercriminals. As EmiSoft, an award-winning malware-protection software company, states "[a]n absence of evidence of exfiltration should not be construed to be evidence of its absence, *especially during the preliminary stages of the investigation*."[31] It is likely that the cybercriminals did steal data and did so undetected.

95.     In this case, according to Defendant's notification to the state Attorneys General,

---

[28] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267 (last accessed December 10, 2021).

[29] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php (last accessed December 10, 2021).

[30] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, (*available at* https://www.it.northwestern.edu/bin/docs/TheConsumerDataInsecurityReport_byNCL.pdf) (last accessed December 10, 2021).

[31] EmiSoft Malware Lab, *The chance of data being stolen in a ransomware attack is greater than one in ten* (EMISOFT BLOG July 13, 2020), https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/ (last accessed December 13, 2021, emphasis added)).

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

cybercriminals had access to Class Members' data at least on August 7, 2021, yet its notice letters about that Data Breach did not go out until February 24, 2022. This is tantamount to the cybercriminals having over seven-months of a head start on stealing the identities of Plaintiff and Class Members.

96.     Accordingly, that Defendant has not found evidence of data being viewed is not an assurance that the data were not accessed, acquired, and stolen. Indeed, the likelihood that cybercriminals stole the data covertly is significant, likely, and concerning.

**Plaintiff Garcia's Experience**

97.     On or about February 24, 2022, Ms. Veronica Garcia, a citizen and resident of Berwyn, Illinois, received Notice of Data Security Incident Letter by US. Mail.

98.     When applying for admission and while a student at St. Augustine, she provided her PII to St. Augustine in order to gain admission, financial aid, receive her education, and under state and federal law, she was required to do so. She reasonably relied on St. Augustine, a higher education institution, to protect the security of her PII.

99.     As a result of the Data Breach and the information that she received in the Notice Letter, Ms. Garcia has spent many hours dealing with the consequences of the Data Breach (closing and opening bank accounts, changing banks, changing passwords, and now self-monitoring the new bank and credit accounts), as well as her time spent verifying the legitimacy of the *Notice of Data Security Incident*, communicating with St. Augustine representatives, communicating with her bank, exploring credit monitoring and identity theft insurance options, and signing up for the credit monitoring supplied by St. Augustine. This time has been lost forever and cannot be recaptured.

100.     As a result of the Data Breach, Ms. Garcia was the targeted victim of a phishing attempt in which she received a fake job offer from what appeared to be officials at St. Augustine College. Ms. Garcia provided further PII as a result of the phishing attempt.

101.     Ms. Garcia is very careful about sharing her own personal identifying information and has never knowingly transmitted unencrypted PII over the internet or any other unsecured

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

source.

102.    Ms. Garcia stores any and all documents containing PII in a secure location, and destroys any documents she receives in the mail that contain any PII or that may contain any information that could otherwise be used to compromise her identity and credit card accounts. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

103.    Ms. Garcia suffered actual injury and damages due to St. Augustine's mismanagement of her PII before the Data Breach.

104.    Ms. Garcia suffered actual injury in the form of damages and diminution in the value of her PII—a form of intangible property that she entrusted to St. Augustine, which was compromised in and as a result of the Data Breach.

105.    Ms. Garcia suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach, and she has suffered extreme anxiety and increased concerns for the theft of her privacy since she received the Notice Letter. She is especially concerned about the theft of her full name paired with her Social Security number. She has also developed alopecia areata as a result of the anxiety and stress this breach has caused her.

106.    Ms. Garcia has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen PII, especially her Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

107.    Ms. Garcia has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in St. Augustine's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

108.    Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated.

109.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

All persons residing in the United States whose PII was compromised in the data breach announced by St. Augustine College in February 2022. (the "Nationwide Class").

110.    Excluded from the Classes are the following individuals and/or entities: St. Augustine College, and St. Augustine College's parents, subsidiaries, affiliates, officers and directors, and any entity in which St. Augustine has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

111.    Plaintiff reserves the right to modify or amend the definition of the proposed class and any future subclass before the Court determines whether certification is appropriate.

112.    **Numerosity – 735 ILCS 5/2-801(1)**: Member of the Classes are so numerous that joinder of all members is impracticable. St. Augustine has identified and sent notice to over 13,000 persons whose PII may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within St. Augustine's records.

113.    **Commonality and Predominance – 735 ILCS 5/2-801(2)**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

   a.  Whether and to what extent St. Augustine had a duty to protect the PII of Plaintiff and Class Members;

   b.  Whether St. Augustine had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

   c.  Whether St. Augustine had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

   d.  Whether St. Augustine failed to adequately safeguard the PII of Plaintiff and Class Members;

   e.  Whether and when St. Augustine actually learned of the Data Breach;

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

f.  Whether St. Augustine adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g.  Whether St. Augustine violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.  Whether St. Augustine failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether St. Augustine adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether St. Augustine breached express or implied contracts – contracts of which Plaintiff and Class Members were third-party beneficiaries -- by failing to safeguard the PII of Plaintiff and Class Members;

k.  Whether Plaintiff and Class Members are entitled to actual damages, nominal damages, and/or punitive damages as a result of St. Augustine's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result of St. Augustine's wrongful conduct, and;

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

114.   Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of herself and the other members of the Classes, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

115. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because St. Augustine has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. St. Augustine's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on St. Augustine's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

116. **Adequacy of Representation** – **735 ILCS 5/2-801(3):** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to that of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

117. **Superiority** – **735 ILCS 5/2-801(4):** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like St. Augustine. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

118. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because St. Augustine would

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

119.    The litigation of the claims brought herein is manageable. St. Augustine's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

120.    Adequate notice can be given to Class Members directly using information maintained in St. Augustine's records.

121.    Unless a Class-wide injunction is issued, St. Augustine may continue in its failure to properly secure the PII of Class Members, St. Augustine may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and St. Augustine may continue to act unlawfully as set forth in this Complaint.

122.    Further, St. Augustine has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive relief with regard to the Class Members as a whole is appropriate.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

123.    Plaintiff restates and reallege all of the foregoing paragraphs as if fully set forth herein.

124.    As a condition of applying for enrollment, gaining financial aid, or remaining a student at St. Augustine College, current and former Students are obligated to provide St.

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

Augustine with certain PII, including but not limited to, their name, date of birth, address, Social Security number, state-issued identification numbers, tax identification numbers, military identification numbers, and financial account numbers.

125.    Plaintiff and Class Members entrusted their PII to St. Augustine on the premise and with the understanding that St. Augustine would safeguard their information, use their PII for legitimate business purposes only, and/or not disclose their PII to unauthorized third parties.

126.    St. Augustine has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

127.    St. Augustine knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party.

128.    St. Augustine had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing St. Augustine's security protocols to ensure that Plaintiff's and Class Members' information in St. Augustine's possession was adequately secured and protected.

129.    St. Augustine also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII.

130.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of St. Augustine's business as higher education institution, for which the diligent protection of PII is a continuous forefront issue.

131.    Plaintiff and Class Members were the foreseeable and probable victims of St. Augustine's inadequate security practices and procedures. St. Augustine knew of should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on St. Augustine's systems.

132.    St. Augustine's own conduct created a foreseeable risk of harm to Plaintiff and

26

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

Class Members. St. Augustine's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. St. Augustine's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' PII, including basic encryption techniques freely available to St. Augustine.

133.    Plaintiff and Class Members had no ability to protect their PII that was in, and possibly remains in, St. Augustine's possession.

134.    St. Augustine was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

135.    St. Augustine had and continues to have a duty to adequately and promptly disclose that the PII of Plaintiff and Class Members within St. Augustine's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

136.    St. Augustine had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and Class Members.

137.    St. Augustine has admitted that the PII of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

138.    St. Augustine, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and Class Members during the time the PII was within St. Augustine's possession or control.

139.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

FILED DATE: 7/12/2022 2:08 PM    2022CH06701

140.     These foregoing frameworks are existing and applicable industry standards in the financial services industry, and Defendant failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the data breach.

141.     St. Augustine improperly and inadequately safeguarded the PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

142.     St. Augustine failed to heed industry warnings and alerts to provide adequate safeguards to protect Students' PII in the face of increased risk of theft.

143.     St. Augustine, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its Students' PII.

144.     St. Augustine, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

145.     But for St. Augustine's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

146.     There is a close causal connection between St. Augustine's failure to implement security measures to protect the PII of Plaintiff and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiff and Class. Plaintiff's and Class Members' PII was lost and accessed as the proximate result of St. Augustine's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

147.     Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as St. Augustine, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of St. Augustine's duty in this regard.

148.     St. Augustine violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. St. Augustine's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

149.     St. Augustine's violation of Section 5 of the FTC Act constitutes negligence *per se*.

150.     Plaintiff and Class members are within the class of persons that the FTC Act was intended to protect.

151.     The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class.

152.     As a direct and proximate result of St. Augustine's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in St. Augustine's possession and is subject to further unauthorized disclosures so long as St. Augustine fails to undertake appropriate and adequate measures to protect the PII in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of St. Augustine's goods and services they received.

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

153.    As a direct and proximate result of St. Augustine's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

154.    Additionally, as a direct and proximate result of St. Augustine's negligence and negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remains in St. Augustine's possession and is subject to further unauthorized disclosures so long as St. Augustine fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## COUNT II
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

155.    Plaintiff re-alleges and incorporate by reference paragraphs above as if fully set forth herein.

156.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for providing education to current and former Students.

157.    Defendant collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits it received on behalf of the Plaintiff and Class Members.

158.    The money that Students paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII.

159.    Defendant failed to implement—or adequately implement—those data security practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

160.    As a result of Defendant's failure to implement data security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's PII.

161.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement the data security measures adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII and that the Students paid for.

162.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate security, and Defendant's resultant disclosures of Plaintiff's and Class Members' PII, Plaintiff and Class Members suffered and continue to suffer considerable injuries in the forms of time and expenses mitigating harms, diminished value of PII, loss of privacy, and a present increased risk of harm.

**COUNT III**
**Breach of Express Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

163.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

164.    This count is plead in the alternative to Count II (Unjust Enrichment) above.

165.    Plaintiff and Class Members allege that they were the express, foreseeable, and intended beneficiaries of valid and enforceable express contracts between Defendant and its former and current Students, contract(s) that (upon information and belief) include obligations to keep sensitive PII private and secure.

166.    Upon information and belief, these contracts included promises made by Defendant that expressed and/or manifested intent that the contracts were made to primarily and directly benefit the Plaintiff and the Class (all students or former students entering into the contracts), as Defendant's service was to provide education to the students in exchange for tuition payments from Plaintiff and the Class, but also safeguarding the PII entrusted to Defendant in the process of providing these services.

167. Upon information and belief, Defendant's representations required Defendant to implement the necessary security measures to protect Plaintiff's and Class Members' PII.

168. Defendant materially breached its contractual obligation to protect the PII of Plaintiff and Class Members when the information was accessed and exfiltrated by unauthorized personnel as part of the Data Breach.

169. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

170. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure of their PII, the loss of control of their PII, the present risk of suffering additional damages, and out-of-pocket expenses.

171. Plaintiff and Class Members are entitled to compensator, consequential, and nominal damages suffered as a result of the Data Breach.

**COUNT IV**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

172. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

173. This count is plead in the alternative to Count II (Unjust Enrichment) above.

174. Plaintiff's and Class Members' PII was provided to Defendant as part of education services that Defendant provided to Plaintiff and Class Members.

175. Plaintiff and Class Members agreed to pay Defendant tuition for education and administration services.

176. Defendant and the Plaintiff and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff's and Class Members' PII, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff's and Class Members' PII.

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

177.     Defendant had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

178.     Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to comply with industry standards and applicable laws and regulations for the security of this information.

179.     Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

180.     Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, resulting in the Data Breach.

181.     Defendant further breached the implied contract by providing untimely notification to Plaintiff and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

182.     The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

183.     As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain.

184.     Had Defendant disclosed that its data security was inadequate, neither the Plaintiff or Class Members, nor any reasonable person would have entered into such contracts with Defendant.

185.     As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain at present risk of suffering additional damages.

186.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

187.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, requests judgment against the St. Augustine and that the Court grant the following:

A.    For an Order certifying the Nationwide Classes and appointing Plaintiff and her Counsel to represent the certified Nationwide Class;

B.    For equitable relief enjoining St. Augustine from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to the Plaintiff and Class;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including but not limited to an order:

    i.    prohibiting St. Augustine from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring St. Augustine to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring St. Augustine to delete, destroy, and purge the personal identifying information of Plaintiff and Class unless St. Augustine can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and the Class;

    iv.    requiring St. Augustine to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

integrity of the personal identifying information of Plaintiff's and Class Members' personal identifying information;

v.  prohibiting St. Augustine from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database;

vi.  requiring St. Augustine to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on St. Augustine's systems on a periodic basis, and ordering St. Augustine to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring St. Augustine to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring St. Augustine to audit, test, and train its security personnel regarding any new or modified procedures;

ix.  requiring St. Augustine to segment data by, among other things, creating firewalls and access controls so that if one area of St. Augustine's network is compromised, hackers cannot gain access to other portions of St. Augustine's systems;

x.  requiring St. Augustine to conduct regular database scanning and securing checks;

xi.  requiring St. Augustine to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.  requiring St. Augustine to conduct internal training and education routinely and

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.  requiring St. Augustine to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with St. Augustine's policies, programs, and systems for protecting personal identifying information;

xiv.  requiring St. Augustine to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor St. Augustine's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.  requiring St. Augustine to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.  requiring St. Augustine to implement logging and monitoring programs sufficient to track traffic to and from St. Augustine's servers; and

xvii.  for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate St. Augustine's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.  For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.  For an award of punitive damages;

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

F.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.  For prejudgment interest on all amounts awarded; and

H.  Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Date: July 12, 2022

Respectfully Submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
gklinger@milberg.com

Terence R. Coates (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*

*Attorneys for Plaintiff and the Proposed Class*

Civil Action Cover Sheet **(08/02/21) CCM 0520 A**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## MUNICIPAL DEPARTMENT/ _____ DISTRICT

Veronica Garcia, as an individual and on behalf of all others similarly situated

_____
                                                    Plaintiff

v.

St. Augustine College

_____
                                                   Defendant

Case No. _____

Jury Demand  ◉ Yes  ○ No

☐  I need language help in court.

I speak _____

## CIVIL ACTION COVER SHEET

A Civil Action Cover Sheet shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate general category which best characterizes your action.

**Civil Case (A)**

☐  0004  Tort not Personal Injury
☐  1004  Tort not Personal Injury (Jury)
☐  0007  Confession of Judgment
☐  1007  Confession of Judgment (Jury)
☐  0008  Replevin
☐  1008  Replevin (Jury)
☐  0017  Detinue
☐  1017  Detinue (Jury Demand)
☐  0031  Foreign Judgment
          Filing Out of State/Out of Country
☐  0054  Registration of Administrative Judgment

**Tort/Personal Injury Case**

Any wrong or damage done to another person, such as, physical pain, illness, or any impairment of physical condition resulting from the careless or negligent actions of others. The most common cases involve auto accident injuries.

☐  0027  Personal Injury Motor Vehicle
☐  1027  Personal Injury Motor Vehicle (Jury)
☐  0048  Dram Shop
☐  1048  Dram Shop (Jury)
☐  0049  Product Liability
☐  1049  Product Liability (Jury)
☐  0051  Personal Injury Subrogation
☐  1051  Personal Injury Subrogation (Jury)
☐  0057  Personal Injury Motor Vehicle Subrogation
☐  1057  Personal Injury Motor Vehicle Subrogation (Jury)

☐  0001  Personal Injury
☑  1001  Personal Injury (Jury)
☐  0063  Tort Intentional
☐  1063  Tort Intentional (Jury)
☐  0062  Property Damage
☐  1062  Property Damage (Jury)

**Other Litigation Case**

(i.e. credit card agreements, any contract between two or more individuals)

☐  0002  Breach of Contract
☐  1002  Breach of Contract (Jury)
☐  0071  Fraud
☐  1071  Fraud (Jury)
☐  0072  Consumer Fraud
☐  1072  Consumer Fraud (Jury)
☐  0073  Breach of Warranty
☐  1073  Breach of Warranty (Jury)
☐  0074  Statutory Action Complaint
☐  1074  Statutory Action Complaint (Jury)
☐  0068  Consumer Debt Complaint
☐  1068  Consumer Debt Complaint (Jury)

**Civil Case (B)**

☐  Filing an Illinois Court Judgment
☐  0100  Petition for Discovery
          A Petition to take depositions or subpoena
          records before a case is filed.
☐  0009  Name Change (Suburban Districts only)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 2

FILED DATE: 7/12/2022 2:08 PM  2022CH06701

**Civil Action Cover Sheet**                                   **(08/02/21) CCM 0520 B**

FILED DATE: 7/12/2022 2:08 PM   2022CH06701

## Civil Housing Case

(i.e. condominium conversion, conservation, demolition/objection to fast track, exterior walls/ facades, fire protection, heat call (including Unincorporated Cook County), lead paint new developments, public nuisance, public places of amusement, strategic task force inspections)

- ☐  0038  Housing
- ☐  0086  Objection to Fast Track
- ☐  0044  Criminal Ordinance Violation
- ☐  0037  Heat Case
- ☐  0034  Vacant Building

## Pro Se Case Type (First Municipal Civil Division only)

The Pro Se Court section of the Civil Division resolves disputes between parties where the amount at issue does not exceed $5,000. The party may act as their own attorney. Forms can be completed at the Pro Se desk in Room 602.

- ☐  0050  Pro Se ($5,000 or less)

## Eviction Case/Civil Eviction/CHA Eviction

A summary proceeding in which the landlord seeks to restore possession of the premises or payment of rent when the tenant has wrongfully withheld rent or possession of the premises.

- ☐  0095  Eviction - Commercial Complaint filed
- ☐  1095  Eviction - Commercial Complaint filed (Jury Demand)
- ☐  0096  Eviction - Residential Complaint filed
- ☐  1096  Eviction - Residential Complaint filed (Jury Demand)
- ☐  0097  Eviction Joint Action - Commecrcial Complaint filed
- ☐  1097  Eviction Joint Action - Commecrcial Complaint filed (Jury Demand)
- ☐  0098  Eviction Joint Action - Residential Complaint filed
- ☐  1098  Eviction Joint Action - Residential Complaint filed (Jury Demand)
- ☐  0018  Distress for Rent
- ☐  1018  Distress for Rent (Jury)
- ☐  0023  Mortgage Foreclosure Eviction
- ☐  1023  Mortgage Foreclosure Eviction (Jury)
- ☐  0024  Mortgage Foreclosure Eviction - Joint Action
- ☐  1024  Mortgage Foreclosure Eviction - Joint Action (Jury)
- ☐  0021  CHA Eviction
- ☐  1021  CHA Eviction (Jury)
- ☐  0022  CHA Joint Action
- ☐  1022  CHA Joint Action (Jury)

⦿ Atty. No.: 6303726          ○ Pro Se 99500

Atty Name: Gary M. Klinger

Atty. for: Plaintiff, Veronica Garcia

Address: 227 W. Monroe Street, Suite 2100

City: Chicago          State: IL

Zip: 60606

Telephone: (866) 252-0878

Primary Email: gklinger@milberg.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org



**St. Augustine**
COLLEGE

Return Mail Processing Center
P.O. Box 6336
Portland, OR 97228-6336





*400551300000116862*
000 0000517 00000000 0001 0002 00259 INS: 0 0
VERONICA A GARCIA

February 24, 2022

**Re: Notice of Data Security Incident**

Dear Veronica A Garcia,

I am writing to inform you of a data security incident experienced by St. Augustine College ("St. Augustine"), that may have involved your personal information. St. Augustine takes the privacy and security of the personal information in our care very seriously. Therefore, we are writing to inform you about the incident and advise you of certain steps you can take to help protect your personal information, and to offer you complimentary credit monitoring and identity protection services.

**What Happened?** On August 7, 2021, St. Augustine detected unusual activity within its digital environment. Upon discovering this activity, we took immediate and active steps to secure our environment and launched an internal investigation. St. Augustine also engaged cybersecurity experts to secure the environment and conduct an investigation to determine whether any personal information may have been impacted. In the course of investigation, St. Augustine determined that certain files stored on the St. Augustine network may have been accessed or acquired by the unknown actor as a result of this incident. St. Augustine then engaged a vendor to review the contents of the impacted systems likely to contain sensitive data. As a result, on February 1, 2022, St. Augustine learned that your personal information may have been impacted. St. Augustine then worked diligently to identify the current address information required to send notification letters.

**What Information Was Involved?** The information potentially impacted in connection with this incident may have included your name as well as your Social Security number, and driver's license number.

**What Are We Doing?** As soon as St. Augustine discovered the incident, St. Augustine took the steps described above. St. Augustine has also implemented additional safeguards to minimize the chance that an incident like this could occur in the future. Further, St. Augustine reported this matter to the Federal Bureau of Investigation and will provide whatever assistance is necessary to hold the perpetrator(s) of this incident responsible. St. Augustine is also providing you with information regarding steps that you can take to help protect your personal information.

As an added precaution, St. Augustine is offering a one-year membership to TransUnion Interactive's *my*TrueIdentity credit monitoring and identity restoration service at no cost to you. This product provides you with premier credit monitoring and identity theft resolution, including up to $1 million of identity theft insurance coverage.[1] The deadline to enroll in these complimentary services is May 31, 2022.

**What You Can Do:** Although St. Augustine is not aware of any misuse of information as a result of the incident, St. Augustine encourages you to follow the recommendations on the following page to help protect your personal information. In addition, we recommend that you enroll in the complimentary services being offered through TransUnion. Activation instructions and a description of the services are included with this letter.

---

[1] To receive these services, you must be over the age of 18, have established credit in the U.S., have a Social Security number in your name, and have a U.S. residential address associated with your credit file.

AF8471 v.02

